THE LAW OFFICES OF KRISTINA T. WILSON P.C.
Kristina T. Wilson, Esq.
Attorney for Plaintiff
645 W. 9th Street
Unit # 110-376
Los Angeles, California 90015
Telephone: (323) 537-7795
CA Bar No. 330475
Email: Wilson@KTWilsonLaw.com
Secondary Email: KTWilsonLaw@gmail.com

THE WILLIAMS LAW GROUP
Andrew Williams, Esq.
Attorney for Plaintiff
20 Island Ave
Suite 801
Miami, Florida 33139
Telephone: (253) 970-1683
CA Bar No. 310526
Email: Andrew@TheWilliamsLG.com
Secondary Email: WilliamsLawFlorida@gmail.com

**Attorneys for Plaintiff, Taylor D. Pendleton**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR D. PENDLETON, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>10Q LLC, a California Limited Liability Company; THE PROPELR, INC, an Illinois corporation; MARRIANI RECORDS, an Illinois corporation; ANTOINE REED p/k/a "Sir Michael Rocks," an individual;<br><br>and DOES 1 through 100, inclusive<br><br>    Defendants. | Case No.:<br><br>COMPLAINT FOR<br><br> 1. COPYRIGHT INFRINGEMENT<br><br> 2. UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES - 1

## COMPLAINT

NOW COMES Plaintiff, TAYLOR D. PENDLETON ("Ms. Pendleton" or "Plaintiff"), by and through the undersigned counsel and hereby files this Complaint and Demand for Jury Trial against Defendants, 10Q LLC ("10Q") THE PROPELR, INC., ("PROPELR");  MARRIANI RECORDS ("MARRIANI"); (10Q, PROPELR and MARRIANI, collectively, shall be referred to as, the "LABEL"); ANTOINE REED p/k/a "Sir Michael Rocks" ("REED") and DOES 1 through 100, inclusive, (all defendants collectively shall be referred to as, the "DEFENDANTS") and states as follows:

## INTRODUCTION

1.  This is a suit based upon violations of the United States Copyright Act (the "Act") and/or alternatively claims for unjust enrichment.  The Plaintiffs have specifically plead counts of: Copyright Infringement, and/or additionally, or in the alternative, a claim for Unjust Enrichment.  Plaintiff, however, may move to amend these counts should additional counts and/or claims against the DEFENDANTS be discovered.

2.   Plaintiff is seeking damages in an amount to be proved at trial in excess of Seventy-Five Thousand ($75,000.00), including an award of, costs, and attorney's fees.

## THE PARTIES, JURISDICTION, AND VENUE

3.  Plaintiff is an individual, and she was at all relevant times mentioned herein a citizen of the County of Lucas, Ohio.

4.  Defendant 10Q is a California corporation with its principal place of business in the State of California. At all relevant times herein, 10Q conducted business in the State of California as music/record label and is managed by PROPELR.

5.  Defendant PROPELR is an Illinois corporation with its principal place of business in the State of Illinois. At all relevant times herein, PROPELR conducted business in the State of California as

music/record label.

6. Defendant MARRIANI is an Illinois company with its principal place of business in the State of Illinois. At all relevant times herein, MARRIANI conducted business in the State of California as a music/record label.

7. Defendant REED is an individual, and he was at the relevant times mentioned in a citizen of the County of Cook, Illinois. Reed is a prominent entertainer, singer and songwriter who is professionally known as "Sir Michael Rocks".

8. The full extent of the facts linking the fictitiously designated Defendants with the cause(s) of actions herein is unknown to the PLAINTIFFS. Further the true names and capacities, whether individual, corporate, associate, plural or partnership, or otherwise, of Defendants, DOES 1 through 10, inclusive, are unknown to the PLAINTIFFS. The PLAINTIFFS therefore sues Defendants by such fictitious names. The PLAINTIFFS are informed and believe, and thereupon allege, that each of the Defendants designated herein as a DOE is negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully responsible in some manner for the events and happenings hereinafter referred to, and negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully, proximately caused injuries and damages to the PLAINTIFFS, as hereinafter alleged. The PLAINTIFFS will ask leave of this Court to amend this Complaint to show said Defendants' names and capacities once the same have been ascertained.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because it arises under an Act of Congress, the United States Copyright Act.

10. Venue is proper in this District pursuant to § 1391, in that each of the Defendants resides and/or conducts business in Los Angeles County, California, and a substantial part of the events giving rise to these claims occurred in Los Angeles, California.

**GENERAL ALLEGATIONS**

11.     On or around May 31, 2016, Ms. Pendleton, a free-lance artist, shared a copy of some of her artwork with REED on Twitter, with the hopes that REED would request to work with her in the future.

12.     REED expressed interest in Ms. Pendleton's artwork and he exchanged his email address with Ms. Pendleton via Twitter to further his inquiries of Ms. Pendleton's artwork.

13.     On June 5, 2016, Ms. Pendleton contacted Reed through the email address REED provided to her, and she advised Reed that she was interested in working with him and she inquired into what it was that REED was interested in having created.

14.     On June 6, 2016, REED responded to Ms. Pendleton via his email and stated that he was interested in having Ms. Pendleton do custom artwork for his official Twitch page, where he planned to release his, at-the-time, newest music project.

15.     On June 15, 2016, REED again contacted Ms. Pendleton via email and stated that he had another idea, and that instead of having Ms. Pendleton create artwork for his Twitch page, REED wanted her to do the cover art for his mixtape (the "Artwork") that he intended to release.

16.     On June 15, 2016,  Ms. Pendleton responded to REED's email and stated that she was interested in creating the Artwork for REED's mixtape and Ms. Pendleton asked for details and any ideas that REED had for the design of the Artwork.

17.     On June 16, 2016, REED explained to Ms. Pendleton that the mixtape would be entitled "Funds and Access" (the "Album") and REED gave Ms. Pendleton some ideas for the Artwork that involved skeletons, a credit card and an ATM.  REED explained to Ms. Pendleton that he wanted the style of the artwork to resemble Ms. Pendleton's aesthetic and the semi-gruesome artistic style that he saw in her previous works.

18. REED attached examples of another piece of artwork that he had retained someone to make for him and he advised Ms. Pendleton that the example "didn't quite make the cut".

19. On June 16, 2016, Ms. Pendleton responded to REED's email with "doodle type thumbnails" of the Artwork that she drew based upon the description that was outlined by REED in his previous email.

20. On June 16, 2016, REED responded to Ms. Pendleton's email and advised her that the thumbnails that she drew looked 'really good' and that he would look at them further to narrow down which one he wanted.

21. REED emailed Ms. Pendleton on June 16, 2016 and asked her to let him know if she decided to add color to the Artwork examples that she presented and REED also corrected Ms. Pendleton for a spelling error that he found in the draft of the Artwork.

22. On June 23, 2016, Ms. Pendleton responded to REED's June 16, 2016 email and she informed REED that she had attached new drafts of the Artwork to her email, which had more detail and color. Ms. Pendleton expressed to REED that these drafts of the Artwork were not intended to be final drafts but that they were only meant to give REED an idea of the concept so he could decide which direction he would want to take.

23. On June 23, 2016, REED responded to Ms. Pendleton's email stating "Niiiice. These look good AF [(as fuck)]."

24. Ms. Pendleton responded to REED's June 23, 2016 email later that same day and thanked him for the compliment. Ms. Pendleton stated that she would help REED to narrow down the choices of the Artwork that she had created.

25. REED never responded to this email last email from Ms. Pendleton.

26. On or around August 30, 2016, Ms. Pendleton unfollowed REED on all social media platforms.

27. On or around August 31, 2020, while Ms. Pendleton was listening to a playlist on the mobile phone application, Spotify, she saw the Artwork displayed as a thumbnail on a song on the Album.

28. On August 31, 2020, Ms. Pendleton emailed REED, reminding him who she was and that she had just discovered that he used the Artwork for the Album and that the Artwork was featured on the Album across multiple music streaming platforms including Soundcloud, Youtube, and Amazon, etc.  In this same email, Ms. Pendleton also expressed her desire to amicably resolve her claims with REED.

29. After REED failed to respond to Ms. Pendleton's August 31, 2020 email, she sent another email to REED on September 3, 2020 to a different email address that she located for REED.

30. On September 3, 2020, REED responded to Ms. Pendleton's September 23, 2020 email stating that he remembered who Ms. Pendleton was and REED apologized to her for not responding sooner because he had not remembered where the Artwork for the Album came from. REED further explained to Ms. Pendleton that in 2018, a person close to him surreptitiously accessed his social media and email accounts without his permission and leaked the Album in 2018, which included the Artwork on its cover.  REED continued that rather than fighting the "leak," he his team decided to "roll with the punches," and let the Album circulate. REED admitted that he erred by not researching where the Artwork came from and he asked Ms. Pendleton what she had in mind as far as resolving the issue.

31. Ms. Pendleton replied to REED's email on September 4, 2020, and stated that she would be willing to resolve the issue with REED in exchange for $3,000.00, plus a sum related to the Artwork's contribution to the Album, its streams and publicity.

32. On September 11, 2020, Ms. Pendleton again emailed REED in order to follow up on her September 4, 2020 email since she did not receive a response from REED. REED, however, failed to respond to Ms. Pendleton's September 11, 2020 email as well.

33. On December 14, 2020, Ms. Pendleton, through counsel, contacted the LABEL and notified the LABEL of its and its client's unauthorized use of the Artwork, Ms. Pendleton's intellectual property. In this correspondence, Ms. Pendleton demanded that the LABEL, who was responsible for the distribution of the Album, and who also displayed the Artwork on their social media site and website to market Artist, to compensate her for REED and its unauthorized use of the Artwork.

34. Ms. Pendleton's counsel and the LABEL's counsel spoke over the phone on January 4, 2021, regarding Ms. Pendleton's claims pertaining to the Artwork.

35. During that conversation, the LABEL's counsel indicated that at that time of the Album's release it was the LABEL's understanding that Ms. Pendleton had participated in a social media contest and that it was allegedly understood by her, REED, and the LABEL that Ms. Pendleton's compensation would be her receiving credit for the Artwork on social.

36. After this phone call, the LABEL was provided evidence of the email exchanges between REED and Ms. Pendleton in an effort to refute the LABEL's claims that the Artwork was created by Ms. Pendleton as a part of her participation in a social media contest and to show that Ms. Pendleton had never been compensated in any way for the Artwork.

37. On January 19, 2021, the LABEL through counsel responded to Ms. Pendleton's claims and the LABEL advised that REED had explicitly requested that Ms. Pendleton provide him with the Artwork that was to be used as cover art for the Album but that neither REED nor Ms. Pendleton had discussed compensation or a fee for the Artwork. The LABEL proceeded to advise that it was its position that because the Album did not earn significant revenue, the LABEL's efforts to take 'reasonable steps to remove' the artwork was an adequate remedy.

38. Despite knowing that he did not purchase the Artwork or have authorization to use the Artwork, REED knowingly, intentionally and in bad-faith released the Album through the LABEL, and the release if the Album generated publicity and income for both the LABEL and REED.

39. While REED claims that the Album was first released without his permission, REED knew that he had not requested Ms. Pendleton's permission to use the Artwork and he failed to take any curative measures, or to direct the LABEL to take any curative action concerning their unauthorized use of the Artwork

40. REED and the LABEL's use of Ms. Pendleton's artwork is, and was, unauthorized and in bad faith.

41. Despite both REED and the LABEL having notice of Ms. Pendleton's claims, Ms. Pendleton's artwork was still being displayed on the LABEL's website, for months after the notice was given, as well as on YouTube, and several other websites where the Album is commercially available, still until this day.

42. As a direct result of the DEFENDANTS' infringing actions, Ms. Pendleton has suffered and she will continue to suffer, monetary losses and other damages. Ms. Pendleton therefore is entitled to recover from the LABEL, in an amount to be determined at trial, the damages she has sustained and will sustain as a result of the DEFENDANTS' infringing actions, and any gains, profits and/or advantages obtained by the DEFENDANTS.

43. The LABEL knew, or reasonably should have known, that REED did not have authority to commercially release the Album with the Artwork on its cover.

44. On information and belief, the LABEL and REED, working in conjunction with each other, obtained tens, if not hundreds of thousands of dollars from their exploitation and unauthorized use of the Artwork through the direct sale, downloads, licensing, synchronization and digital streaming of the the Album, and through the indirect publicity and promotion that REED and the LABEL received as a result of the Album's release, all in violation of Ms. Pendleton's copyrights.

## COUNT I
## COPYRIGHT INFRINGEMENT
(by the PLAINTIFF against the LABEL)

45. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

46. On information and belief, the LABEL received authority and permission from REED to commercially release the Album on or around September 21, 2018.

47. The LABEL has unlawfully used the Artwork and it has never sought Ms. Pendleton's consent, permission or approval to use the Artwork despite having knowledge that its use of the Artwork was unauthorized and it lacked both explicit and implicit permission.

48. The LABEL has also marketed, licensed and/or otherwise benefited from its exploitation of the Artwork in direct violation of Ms. Pendleton's rights under the Act.

49. Upon information and belief, the LABEL has received substantial sums of money as a direct result of its infringing use of the Artwork and the LABEL has paid or caused others to pay it, REED, and others, substantial sums of money associated with its infringing use of the Artwork.

50. The LABEL has violated Ms. Pendleton's rights to control, sell, market, and/or distribute her artwork and/or any derivative works from the artwork in direct violation of Ms. Pendleton's rights under the Act.

51. Given the commercial success of the Album, the LABEL has realized unjust profits, gains and advantages as a proximate result of its infringement, and it will continue realizing such unjust profits, gains and advantages as a proximate result of its infringement, as long as such infringement is permitted to continue.

52. As a direct and proximate result of the DEFENDANTS' willful copyright infringement, Ms. Pendleton has suffered and she will continue to suffer, monetary losses and other injuries. Ms. Pendleton

is entitled to recover from LABEL, in an amount to be determined at trial, the damages that she has sustained and will sustain, and any gains, profits and advantages obtained by LABEL as a result of its infringing acts and its use and publication of the Artwork on the Album.

53. Ms. Pendleton is entitled to recover damages from the LABEL, which include, but are not limited to her attorneys' fees the costs of this action, and any gains, profits and/or advantages that have been obtained by the LABEL as a result of its actions as have been alleged in this Complaint.

54. At the present time, the amount of Ms. Pendleton's damages, and the amount of the gains, profits and/or advantages received by the LABEL cannot be fully ascertained; however, such will be established according to proof at trial.

## COUNT II
## COPYRIGHT INFRINGEMENT
(by the PLAINTIFF against LABEL)

55. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

56. Prior to September 21, 2018, the LABEL, on information and belief, received authorization from REED to release the Album on or around September 21, 2018.

57. On or around September 21, 2018, the LABEL released the Album for commercial purposes, which featured the Artwork.

58. The Artwork that Ms. Pendleton created was used for the Album's cover art and commercially available across multiple streaming platforms, including but not limited to, Amazon Music, Spotify, Tidal, Apple Music, Pandora, and Youtube. The Artwork was also used to promote the Album on REED's personal social media pages and on the LABEL's website.

59. Neither the LABEL, nor REED requested Ms. Pendleton's permission to use the Artwork on the Album.

60. The LABEL has received monies for the Album, which Ms. Pendleton is, at least in part, responsible for, and therefore Ms. Pendleton is entitled to a portion of the monies earned and received by the LABEL through the commercial release of the Album.

61. Through its use of the artwork, Ms. Pendleton conferred a benefit on the LABEL who benefitted from the sales and streams of the Album.

62. The LABEL was, and is, aware of the benefit that it received from Ms. Pendleton through her creation of the Artwork that was used for the Album's cover.

63. The LABEL intended to receive, and it ultimately did/has received financial gain and compensation through the commercial release of the Album.

64. Notwithstanding the financial gain and compensation that the LABEL has received through its commercial release of the Album. Ms. Pendleton has not received any financial gain or compensation.

65. The circumstances are such that it would be inequitable for the LABEL to retain the benefits that were conferred on it by Ms. Pendleton, without providing any benefits or compensation to Ms. Pendleton.

### COUNT III
### COPYRIGHT INFRINGEMENT
(by the PLAINTIFF against REED)

66. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

67. As described above, REED has infringed, and continues to infringe, upon Ms. Pendleton's rights and interest to the Artwork in violation of her exclusive rights under 17 U.S.C. § 101 et seq by commercially releasing the Album with the Artwork on its cover despite not having any permission or license from Ms. Pendleton to feature the Artwork on the Album, or on any streaming platform.

68. REED's actions, and responses, or lack thereof, to Ms. Pendleton's good faith attempts to advise REED of his infringing use of the Artwork demonstrate that REED's infringement of the Artwork was deliberate, willful, and in disregard of Ms. Pendleton's rights under the Act.

69. Given the commercial success of the Album, REED has realized unjust profits, gains and/or advantages as a proximate result of his unauthorized use of the Artwork, and he will continue realizing unjust profits, gains and/or advantages as a proximate result of his unauthorized use, as long as such use is permitted to continue.

70. As a direct and proximate result of REED'S willful copyright infringement, Ms. Pendleton has suffered and she will continue to suffer, monetary losses and damages. Ms. Pendleton is therefore entitled to recover from REED, in an amount to be determined at trial, the damages she has sustained and will sustain, and any gains, profits and/or advantages that were obtained by REED as a result of his unauthorized use and publication of the Album featuring the Artwork that was originally created by Ms. Pendleton.

71. Ms. Pendleton is entitled to recover damages from REED, which include, but are not limited to her attorneys' fees, the costs of this action, and any gains, profits and/or advantages that have been obtained by REED as a result of his actions as alleged above.

72. At the present time, the amount of Ms. Pendleton's damages, gains, profits and/or advantages cannot be fully ascertained; however, such will be established according to proof at trial.

## COUNT IV
## UNJUST ENRICHMENT
(by the PLAINTIFF against REED)

73. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

74. On or Around September 21, 2018, REED authorized the LABEL to commercially release the Album, which featured the Artwork on its cover.

75. By commercially releasing the Album with the Artwork on its cover, Ms. Pendleton conferred a benefit upon REED.

76. The REED was, and is aware of, and had knowledge of, the benefit that it received from using Ms. Pendleton's artwork when it released the Album.

77. REED intended to receive, and ultimately did/has received financial gain and compensation through the release of the Album.

78. Notwithstanding the financial gain and compensation that REED received through his infringing usage of the Artwork, Ms. Pendleton has not received any financial gain or compensation as a result of the commercial release of the Album, which included the Artwork that she originally created on its cover.

79. The Artwork on the Album directly and/or indirectly contributed to the commercial success of the Album.

80. The circumstances are such that it would be inequitable for REED to retain the benefits that were conferred on him by Ms. Pendleton, without providing any benefits to Ms. Pendleton.

**WHEREFORE**, for the reasons set forth herein, PLAINTIFF respectfully requests that this Court award damages in her favor and against the DEFENDANTS and each of them as follows:

  a. For general and special damages to be proven at trial in an amount in excess of seventy-five thousand dollars ($75,000);

  b. For an injunction, declaration, or other mandate that provides for Plaintiff to be properly credited as the artist of the Album's cover art;

c. For an injunction, declaration, or other mandate that provides for the DEFENDANTS to direct any and all third-parties whom they control to properly credit Plaintiff as the artists/creator of the Album's cover art;

d. For a full and proper accounting of any and all monies earned from the Album;

e. For any respective plaque(s) and any other credit/ancillary benefit that Plaintiff is entitled;

f. For the costs of this action;

g. For attorney's fees;

h. For interest; and

i. For any other and further legal and equitable relief this Court deems just and proper.

DATED 1st day of July 2022.

**THE LAW OFFICE OF
KRISTINA T. WILSON, P.C.**

/s Kristina T. Wilson, Esq.

**THE WILLIAMS LAW GROUP**

/s Andrew Williams, Esq.

## DEMAND FOR JURY TRIAL

Plaintiff TAYLOR D. PENDLETON, hereby demand a trial by jury for all issues so triable.

DATED this 1st day of July 2022.

**THE LAW OFFICE OF
KRISTINA T. WILSON, P.C.**

/s Kristina T. Wilson, Esq.

**THE WILLIAMS LAW GROUP**

/s Andrew Williams, Esq.

# RESERVATION OF RIGHTS

Plaintiff TAYLOR D. PENDLETON reserves the right to further amend this Complaint, upon completion of her investigation and discovery, to assert any additional claims for relief against the DEFENDANTS or any other parties as may be warranted under the circumstances and as allowed by law. Plaintiff TAYLOR D. PENDLETON further reserves the right to seek and to have punitive damages assessed against the DEFENDANTS.

DATED this 1st day of July 2022.

**THE LAW OFFICE OF
KRISTINA T. WILSON, P.C.**

/s Kristina T. Wilson, Esq.

**THE WILLIAMS LAW GROUP**

/s Andrew Williams, Esq.